The STATE of Ohio, Appellee,

v.

GOODSON, Appellant.

[Cite as *State v. Goodson*, 192 Ohio App.3d 246, 2011-Ohio-722.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94954.

Decided Feb. 17, 2011.

William D. Mason, Cuyahoga County Prosecuting Attorney, and John P. Colan, Assistant Prosecuting Attorney, for appellee.

Susan J. Moran, for appellant.

MARY EILEEN KILBANE, Administrative Judge.

{¶ 1} Defendant-appellant, Robert Goodson, appeals from his convictions for drug possession and drug trafficking. For the reasons set forth below, we affirm the convictions, but because defendant was convicted of crimes that are allied offenses of similar import, we vacate the sentence and remand the case to the trial court for resentencing under R.C. 2941.25.

{¶ 2} On August 20, 2009, defendant and his codefendant, Dale Whitsett, were indicted for possession of less than one gram of crack cocaine, in violation of R.C. 2925.11(A); trafficking in less than one gram of cocaine, in violation of R.C. 2925.03(A)(1) (selling or offering to sell); trafficking in less than one gram of cocaine, in violation of R.C. 2925.03(A)(2) (preparing for distribution); and possession of criminal tools, in violation of R.C. 2923.24, all with forfeiture specifications for the recovery of $147.

{¶ 3} Defendant pleaded not guilty, and the matter against him proceeded to a jury trial on January 29, 2010.

{¶ 4} The state presented testimony from the following members of the Cleveland Police Department: Lieutenant Gordon Holmes, Detective Frank Woyma, Detective Michael Rasberry, Detective Robert C. McKay II, and Detective John Hall.

{¶ 5} Holmes testified that he received police-action complaints about drug activity in the area of East 131st Street and Crennell Avenue. The matter was assigned to Rasberry. Rasberry testified that he has made drug arrests in this area on past occasions. On August 5, 2009, he observed "individuals that appeared to be drug dependent going back and forth," so he arranged a buy-bust with a confidential informant. The informant was searched and determined to be free of contraband. He was given $20 in marked currency and taken to the area at around 12:15 a.m. Hall and Rasberry watched from the corner and waited for the informant to signal that a drug buy had been completed. Holmes, Woyma, and McKay waited a few blocks away in "takedown vehicles."

{¶ 6} According to Rasberry, the informant spoke with a man, later identified as Whitsett, who was standing at the corner of East 131st Street and Crennell Avenue. They had "a short, brief conversation, in which a hand-to-hand exchange was made between our [informant] and * * * Whitsett." Whitsett then walked approximately four houses eastward on Crennell Avenue to a location where the officers had made prior drug arrests and spoke with the defendant, who was standing outside. Whitsett "made a hand-to-hand exchange with [defendant], came back and made another exchange with our [informant], in which our [informant] then gave the completed sale signal."

{¶ 7} Rasberry admitted, however, that he was not close enough to see the objects that were passed in the hand-to-hand transactions. Likewise, Hall

admitted that he saw something being exchanged, but he "didn't physically see what was being passed."

{¶ 8} After the informant signaled that he had made a drug buy, Holmes, Woyma, and McKay drove to the scene and arrested the defendant and Whitsett. The marked currency was subsequently recovered from Whitsett. Two rocks of crack cocaine, one weighing .08 grams and the other weighing .06 grams, were also recovered—one from Whitsett and one from the informant. Currency in the amount of $147 was recovered from the defendant.

{¶ 9} Holmes explained that as a means of avoiding being caught with drugs and drug money, dealers will work with another individual who can vouch for a prospective drug buyer and handle the exchange of drugs and money for the dealer.

{¶ 10} Both Holmes and Woyma admitted that they did not personally observe the hand-to-hand transactions in this matter and did not personally observe defendant's conduct. They further admitted that the police use informants on a regular or nightly basis. Some of the informants have previously been arrested and are working with police in order to get better deals on their pending cases. However, the informant in this matter was not attempting to obtain a deal. Holmes also admitted that a computerized copy of the police report erroneously indicated that three rocks of crack cocaine were recovered from defendant instead of two, and a field report indicated that defendant was in actual possession of the rocks of crack cocaine. Rasberry testified that the case-information report for this incident listed him as the arresting officer, but he admitted that he did not arrest either suspect. He further admitted that the field report in the matter contained the incorrect date of July 30, 2009.

{¶ 11} Defendant elected to present evidence. He testified on his own behalf and also presented the testimony of Naomi Williams and Samika Kimbrough.

{¶ 12} Defendant denied having drugs and denied selling drugs with Whitsett. He testified that earlier in the evening, he was with a group of people at Kimbrough's house on Crennell Avenue. They then walked to a bar at the corner of East 131st Street and Crennell Avenue and stayed there for about one hour. On their way back to Kimbrough's house, defendant saw Whitsett and gave him a "dap" or brief handshake. He further testified that the money recovered from him ($147) was from his mother's estate.

{¶ 13} Williams [1] and Kimbrough likewise testified that defendant was with them and others at Kimbrough's house and at the bar on the corner of East 131st

---

1. Williams admitted that despite the trial court's order for a separation of witnesses, she was present in the courtroom during a portion of the state's case, and she also admitted that she spoke to defendant about what she had heard.

Street and Crennell Avenue. Defendant saw Whitsett as they left to return to Kimbrough's house. When they arrived at the home, the police were there with guns drawn. They searched defendant, arrested him, and then searched the home, but they found nothing.

{¶ 14} McKay testified on rebuttal that following defendant's arrest, he obtained consent to search the Crennell Avenue residence to look for the buy money. He denied that the officers had their weapons drawn. According to McKay, marijuana was being grown in the home. A razor blade and sandwich baggies were on the dining room table; and according to the officer, these items are evidence of preparation to sell drugs.

{¶ 15} The jury subsequently convicted defendant of the charges of drug possession and drug trafficking, but acquitted him of possession of criminal tools and the forfeiture specifications. The trial court subsequently sentenced him to concurrent 12–month terms of imprisonment and three years of postrelease control. Defendant now appeals and assigns three errors for our review.

{¶ 16} Defendant's first assignment of error states:

Appellant was denied due process and the right to a fair trial by the admission of evidence in violation of Evidence Rules 401, 402, 403, 404(B), and 609.

{¶ 17} Within this assignment of error, defendant complains that the state was improperly permitted to use evidence of defendant's prior crimes as proof of a motive, scheme, or plan to conceal his drug sales through the use of a middleman.

{¶ 18} We review a trial court's decision regarding the admission of such evidence under an abuse-of-discretion standard. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

{¶ 19} Pursuant to Evid.R. 404(B):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Id.; see also R.C. 2945.59.

{¶ 20} The admissibility of other-acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry* (1975), 43 Ohio St.2d 66, 72 O.O.2d

37, 330 N.E.2d 720. Further, because the statute and the rule codify an exception to the common law with respect to other acts of wrongdoing, they are to be construed against admissibility. *State v. Murray,* Cuyahoga App. No. 91268, 2009-Ohio-2580, 2009 WL 1564818.

{¶ 21} To be admissible, the prior acts must not be too remote and must be closely related in nature, time, and place to the offense charged. *State v. Henderson* (1991), 76 Ohio App.3d 290, 294, 601 N.E.2d 596. In addition, other-acts evidence is subject to the limitations provided in Evid.R. 402 and 403; therefore, the proffered evidence must be relevant and its probative value must outweigh its potential for unfair prejudice. *Murray,* citing *State v. Gaines,* Cuyahoga App. No. 82301, 2003-Ohio-6855, 2003 WL 22966190.

{¶ 22} Finally, when prior-acts evidence is admissible as an exception to the exclusionary rule, the trial court must give a limiting instruction to the jury for proper consideration of the evidence. See *State v. Barnes,* Cuyahoga App. No. 92512, 2010-Ohio-1659, 2010 WL 1500566, citing *State v. Fischer* (Nov. 24, 1999), Cuyahoga App. No. 75222, 1999 WL 1068064.

{¶ 23} In this matter, the record indicates that on January 27, 2010, the state filed a notice that it intended to use evidence of the defendant's prior crimes as proof of motive, plan, and knowledge pursuant to Evid.R. 404(B). In this notice, the state asserted that defendant had been arrested for trafficking and other drug offenses on 14 occasions between October 21, 1999, and March 4, 2007. The state maintained that defendant's past convictions led him to conceal the instant drug sales through the use of a middleman. On January 29, 2010, defendant's trial counsel objected and argued that the prior convictions were not germane to the instant matter and that this evidence was more prejudicial than probative. The trial court concluded that the state would be permitted to introduce the evidence of defendant's prior crimes because this evidence "does go to scheme and plan. They show a pattern, they show a plan, and they show a motive."

{¶ 24} We conclude that this ruling was erroneous. The other-acts evidence was remote and not shown to be closely related in nature, time, and place to the offense charged. It does nothing more than create the inference that defendant is a drug trafficker who continued to do so on the date of his arrest—an inference that is explicitly prohibited by the rule. See, e.g., *State v. Miley,* Richland App. Nos. 2005–CA–67 and 2006–CA–14, 2006-Ohio-4670, 2006 WL 2589816. Allowing testimony of defendant's prior acts of abuse was of questionable probative value and was unfairly prejudicial. It was therefore improper and violated Evid.R. 404(B). Moreover, the trial court failed to give a limiting instruction to the jury for proper consideration of this evidence.

{¶ 25} Nonetheless, we find that admission of evidence pertaining to defendant's prior offenses was harmless because, in light of the ample evidence of guilt, its admission did not affect the outcome of the trial.

{¶ 26} The first assignment of error is therefore overruled.

{¶ 27} Defendant's second assignment of error states:

Appellant's conviction is against the manifest weight of the evidence.

{¶ 28} In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 29} The appellate court may not merely substitute its view for that of the jury, and reversal on manifest-weight grounds is reserved for " 'the exceptional case in which the evidence weighs heavily against the conviction.' " Id., quoting *Martin*.

{¶ 30} In this matter, after examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice in convicting defendant of the offenses. The evidence demonstrated that the informant was determined to be free of contraband and was given a marked $20 bill. He spoke with Whitsett at the corner of East 131st Street and Crennell Avenue. Whitsett walked to defendant, who was standing approximately four houses to the east on Crennell Avenue, at a location where the officers had made prior drug arrests. Whitsett and defendant made a hand-to-hand exchange, and Whitsett then came back and made another exchange with the informant. At this point, the informant signaled that a sale had been made.

{¶ 31} Although Hall and Rasberry could not tell from their vantage points that the objects that Whitsett obtained from defendant were rocks of cocaine, these witnesses clearly established that Whitsett did not complete the drug sale until after he obtained the items from defendant. Further, defendant admitted that he had hand-to-hand contact with Whitsett. Despite his explanation that he had simply given Whitsett a "dap" or handshake, there was considerable evidence that this type of activity was indicative of a drug sale. Finally, although the buy

money was recovered from Whitsett rather than defendant, the state's evidence indicated that Whitsett and defendant were acting in concert.

{¶ 32} Therefore, upon review of the entire record, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. See *State v. Landingham*, Cuyahoga App. No. 84715, 2005-Ohio-621, 2005 WL 375475 (defendant's convictions for drug trafficking were supported by sufficient evidence and were not against the manifest weight of the evidence, under aiding-and-abetting analysis, where the record demonstrated that defendant spoke with informant, had codefendant come over, and codefendant made a hand-to-hand transaction with informant and obtained the marked buy money, while defendant acted as lookout); *State v. Stewart*, Cuyahoga App. No. 83428, 2004-Ohio-4073, 2004 WL 1752874 (defendant's convictions for drug trafficking, drug possession, and possession of criminal tools were supported by sufficient evidence and were not against the manifest weight of the evidence where the record indicated that defendant's accomplice or "runner" made drug sales, then entered defendant's vehicle and handed defendant what appeared to be money); *State v. Coleman*, Cuyahoga App. No. 89358, 2008-Ohio-2806, 2008 WL 2346449 (defendant's convictions for drug trafficking and drug possession were supported by sufficient evidence and were not against the manifest weight of the evidence where he made a drug sale to informant, but his codefendant accepted the money from the sale).

{¶ 33} The second assignment of error is without merit and overruled.

{¶ 34} Defendant's third assignment of error states:

The trial court erred in merging appellant's sentences for possessing, transporting, and selling a single quantity of crack cocaine in violation of the provisions within R.C. 2941.25, the protections of the double jeopardy clause of the Fifth Amendment to the Constitution of the United States, and Section 10, Article I of the Ohio Constitution.

{¶ 35} Herein, defendant asserts that his convictions for possession of crack cocaine and trafficking in crack cocaine, under Counts 1 and 3, are allied offenses that must be merged into a single conviction pursuant to R.C. 2941.25(A).

{¶ 36} The state of Ohio concedes that in *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, paragraph two of the syllabus, the Ohio Supreme Court held that "[t]rafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import under R.C. 2941.25(A) because commission of the first offense necessarily results in commission of the second."

{¶ 37} However, the *Cabrales* court additionally held that trafficking in a controlled substance under R.C. 2925.03(A)(1) and trafficking in a controlled

substance under R.C. 2925.03(A)(2) are not allied offenses of similar import. The court explained:

> To be guilty of trafficking under R.C. 2925.03(A)(1), the offender must sell or offer to sell a controlled substance. This subsection requires that the offender intends to sell the controlled substance. To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale by the offender or another person. This subsection merely requires that the offender must know that the substance is intended for sale, but the sale can be made by a person other than the offender. Thus, an offender could commit trafficking under R.C. 2925.03(A)(2) and not necessarily commit trafficking under R.C. 2925.03(A)(1), because the offender merely knows that the controlled substance is intended for sale, as opposed to actually offering it for sale or selling it personally. Conversely, one could sell or offer to sell a controlled substance without ever undertaking many of the actions that constitute trafficking under R.C. 2925.03(A)(2), i.e., preparing for shipping or shipping the controlled substance. Therefore, committing trafficking under one of these provisions will not necessarily result in committing trafficking under the other provision.

(Emphasis omitted.)

{¶ 38} The *Cabrales* court additionally held that possession under R.C. 2925.11(A) and trafficking under R.C. 2925.03(A)(1) are not allied offenses of similar import, explaining as follows:

> [T]rafficking under R.C. 2925.03(A)(1), [requires that] the offender must knowingly sell or offer to sell a controlled substance. Trafficking under R.C. 2925.03(A)(1) requires an intent to sell, but the offender need not possess the controlled substance in order to offer to sell it. Conversely, possession requires no intent to sell.

{¶ 39} In accordance with the foregoing, the assignment of error is well taken in part, as the trial court was required to merge defendant's convictions for trafficking in a controlled substance under R.C. 2925.03(A)(2), as set forth in Count 3, and possession of that same controlled substance under R.C. 2925.11(A), as set forth in Count 1.

{¶ 40} This issue is not rendered moot by the trial court's imposition of concurrent terms for each conviction. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. Accordingly, defendant's convictions are affirmed, his sentence is vacated, and we remand the case to the trial court for resentencing, at which time the state will elect which of the allied offenses it wishes to

pursue at sentencing for which the defendant should be punished. See *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182.

Judgment accordingly.

BOYLE and ROCCO, JJ., concur.