[Cite as *State v. Morris*, 2012-Ohio-6151.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 09CA0022-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CARL M. MORRIS, JR. | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 08CR0408 |

DECISION AND JOURNAL ENTRY

Dated: December 28, 2012

---

DICKINSON, Judge.

INTRODUCTION

**{¶1}** A jury convicted Carl M. Morris Jr. of two counts of raping his stepdaughter, S.K. According to S.K., Mr. Morris sexually molested her over the course of several years. Mr. Morris appealed, and this Court reversed his convictions because the trial court prejudiced Mr. Morris by incorrectly admitting other-act evidence in violation of Rule 404 of the Ohio Rules of Evidence. *State v. Morris*, 9th Dist. No. 09CA0022-M, 2010-Ohio-4282, ¶ 44, *rev'd*, 132 Ohio St. 3d 337, 2012-Ohio-2407. In reaching that conclusion, this Court applied a de novo standard of review to consider whether the proffered evidence had a tendency to prove any of the enumerated permissible purposes for such evidence under Evidence Rule 404(B) and whether any of those things were of consequence to the determination of the action. *Id.* at ¶ 13. The Ohio Supreme Court reversed this Court's decision and remanded the matter for application of an abuse-of-discretion standard of review to the first assignment of error and, if necessary, a

review of the remaining assignments of error that were mooted by this Court's reversal of the convictions. *Morris*, 2012-Ohio-2407, ¶ 23. This Court reverses Mr. Morris's convictions because the trial court abused its discretion by admitting other-act evidence in violation of Rule 404 of the Ohio Rules of Evidence.

BACKGROUND

{¶2} When S.K. was in first grade, her mother married Mr. Morris and he moved into their house to live with S.K., her mother, her grandmother, and her older sister, Sarah. According to S.K., when she first met Mr. Morris, he would do magic tricks to entertain her. He would do card tricks, coin tricks, or make his leg "disappear" using a towel. Sarah and the girls' mother testified that Mr. Morris walked around the house in a towel before and after showering and would sometimes stop and do magic tricks, like the one involving manipulating the towel to make it seem as though one of his legs had disappeared.

{¶3} S.K. testified that, when she and Mr. Morris were alone, he used to show her a trick requiring her to feel his thumb covered by a towel across his lap. S.K. was amazed that he could make his "thumb" turn to Jell-o and then become very hard. She testified that Mr. Morris later showed her that it was his penis she had been touching behind the towel. According to S.K., at some point, Mr. Morris started lying on the couch beside her and masturbating while rubbing her thighs with his other hand.

{¶4} S.K. testified that Mr. Morris vaginally raped her at least 10 times between when she entered second grade and when her grandmother died. S.K. was 13 years old when her grandmother died. She testified that, after her grandmother died, she started walking away from Mr. Morris when he would try to touch her. According to S.K., Mr. Morris soon stopped trying.

{¶5}   S.K. testified that, for the most part, she could not remember the dates of the events she described, but that, after talking to police, she found she was able to assign dates to two of the incidents.  She testified that Mr. Morris raped her when they were home alone before taking her to the hospital to visit her mother after surgery.  S.K.'s mother testified that she stayed overnight in a hospital on April 22, 2003, following a hysterectomy.  S.K. was nine years old at that time.  S.K. also testified that Mr. Morris raped her sometime between October 20 and November 1, 2005, when she was 12 years old.  She testified that she remembered the date because Mr. Morris interrupted a Halloween cartoon on television.

{¶6}   S.K. testified that Mr. Morris never grabbed her, used force, or threatened her; that he never told her not to tell anyone what he was doing; and that she did not tell anyone about his behavior until at least four months after he had separated from her mother and moved out of their house.  S.K.'s best friend testified that, about four or five months after Mr. Morris had moved out of the house, S.K. told her that he had raped her, but did not share any details.  Six months after Mr. Morris had moved out of the house, S.K. told her parents that Mr. Morris had raped her.  They insisted that she repeat the information to the police and to a therapist she had been seeing.  S.K.'s therapist testified that, although he cannot be certain whether a client is telling the truth, there was no clinical reason to disbelieve S.K.'s account.  He further testified that her description of the magic tricks fit the pattern of something a pedophile would do to prepare a child for sexual activity.

{¶7}   At trial, Mr. Morris argued that both S.K. and her mother had reasons to fabricate the allegations against him.  S.K.'s mother testified that, after Mr. Morris moved out, she suffered financial hardship and lost the house they had purchased together.  Although she said that Mr. Morris had difficulty keeping jobs, she admitted that she could not afford the house

without his help. Mr. Morris also elicited testimony from various witnesses that S.K. first told her parents that Mr. Morris had raped her in the middle of a dramatic confrontation between her and her parents regarding something they had seen on her MySpace page. The trial court excluded the details of the information contained on the page, but S.K. testified that the issue that provoked her parents' wrath had nothing to do with Mr. Morris.

{¶8} Although neither Sarah nor the girls' mother testified to ever having seen Mr. Morris molesting S.K., they both testified to situations that provoked some suspicion regarding his conduct with S.K. Sarah testified that she once saw Mr. Morris and S.K. "underneath the blankets" on the couch. Although the two had always been close and it was not uncommon to see them physically close to each other, it made her uncomfortable on that occasion.

{¶9} S.K.'s mother testified that she came downstairs late one night in the spring of 2005 "and both [S.K. and Mr. Morris] jumped off the couch really quick and [S.K.] went and ran in to the bathroom." She testified that she confronted both of them, but each repeatedly denied that anything inappropriate had happened. S.K. testified that she remembered being on the couch with Mr. Morris while he was masturbating and touching her leg with his other hand when her mother suddenly came down the stairs. According to S.K., "[Mr. Morris] jumped a little" while she just "tightened up" for a moment before heading to the bathroom. She said that when her mother asked her what was going on, she told her that nothing had happened.

OTHER-ACTS EVIDENCE

{¶10} Mr. Morris's first assignment of error is that the trial court incorrectly allowed the State to introduce evidence of his "other . . . acts to show proof of [his] character in violation of [Rule 404(B) of the Ohio Rules of Evidence] . . . ." Mr. Morris has pointed to three lines of questioning to which he objected at trial. First, he has argued that the trial court should have

excluded all references to an incident involving Sarah, S.K.'s adult sister.  Second, he has argued that the trial court should have excluded S.K.'s mother's testimony regarding him sometimes ejaculating into towels or t-shirts during intercourse.  Finally, he has argued that the trial court should have excluded S.K.'s mother's testimony regarding his penchant for kicking the dog if the mother refused to have sex with him.

{¶11}  "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St. 2d 66, 68 (1975).  Rule 404(B) of the Ohio Rules of Evidence provides that, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,]" but may be admissible for other purposes.  Evid. R. 404(B).  For example, evidence of other crimes, wrongs, or acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*  Although the permissible purposes for the use of character evidence found in Evidence Rule 404(B) are not limited to those delineated in the rule, such evidence is "not admissible to prove the character of a person in order to show action in conformity therewith[.]" *State v. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, ¶ 18.

{¶12}  The Ohio Supreme Court has recently directed courts to conduct a three-step test to consider whether other-act evidence is admissible. *State v. Williams*, ___ Ohio St. 3d ___, 2012-Ohio-5695, ¶ 19.  "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20 (citing Evid. R. 401).  The second step is to "consider whether evidence of the other crimes, wrongs, or acts is presented to prove

the character of the accused in order to show activity in conformity therewith or whether [it] is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* (citing Evid. R. 403).

**{¶13}** This Court has held that the rule "is to be strictly construed against the state and conservatively applied by the trial courts." *State v. Bronner*, 9th Dist. No. 20753, 2002-Ohio-4248, ¶ 93 (citing *State v. DeMarco*, 31 Ohio St. 3d 191, 194 (1987) ("This court has held that R.C. 2945.59 is to be strictly construed against the state, and to be conservatively applied by a trial court. . . . The same logic should apply to Evid.R. 404(B).")). This Court will apply an abuse of discretion standard of review to determine whether the trial court properly exercised its discretion by admitting the proffered evidence. *State v. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, ¶ 19.

## PROPOSITIONING HIS ADULT STEPDAUGHTER

**{¶14}** Mr. Morris has argued that the trial court incorrectly permitted Sarah to testify about an incident with Mr. Morris. Sarah is seven years older than S.K. In spring 2005, Sarah was an adult and had been married the previous Christmas, but was living in the same house with her grandmother, younger sister, mother, and Mr. Morris. Sarah testified that she walked into her mother's bedroom one evening and found Mr. Morris sitting on the corner of the bed. She said that he "grabbed [her] waist and pulled [her] toward him and said, 'You don't know what I would do to you but your mother would get mad.'" Sarah testified that she perceived the comment to be sexual in nature, but that she "just laughed it off," told him he was drunk, and pushed him away. She returned to her own bedroom and that was the end of the interaction.

{¶15} Sarah later told her mother about the incident, and her mother kicked Mr. Morris out of the house for the night. The next day, Mr. Morris tearfully apologized to Sarah, saying that he had been drunk at the time and did not remember making the comment. Sarah testified that she believed Mr. Morris had been drunk because she had seen him drinking earlier that evening. After the apology, Mr. Morris moved back into the house and, according to Sarah, never again made an inappropriate comment to her. S.K.'s mother also testified about kicking Mr. Morris out of the house briefly after learning about the incident with Sarah.

{¶16} The trial court overruled Mr. Morris's objection at trial, saying at sidebar that it "th[ought] it[ ] [was] covered by . . . 404(B)[.]" The trial court did not rule with any specificity why the testimony about Mr. Morris's encounter with Sarah was admissible under Evidence Rule 404(B). The court did not explain what permissible use the evidence could be put to or offer any analysis except to opine that the conduct with Sarah was "similar enough" to the charged conduct with S.K. because it could be interpreted as a "sexual come-on" and it happened "in the same bedroom" as some of the alleged abuse of S.K. The court did not analyze whether the evidence was admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident or whether any of those topics was even at issue at trial. Further, the trial court did not offer any other permissible use for the evidence not enumerated in Rule 404(B).

{¶17} On appeal, Mr. Morris has argued that all testimony about the incident with Sarah was inadmissible under Evidence Rules 404(B) and 403. He has specifically argued that evidence of the alleged incident with Sarah was highly prejudicial and not at all similar to the crimes with which he was charged. The State has argued on appeal that the incident with Sarah is similar to the crimes charged because the target of each incident was one of Mr. Morris's

stepdaughters and it happened in the mother's bedroom, as did some of the alleged incidents of molestation and rape described by S.K. On this basis, the State has now argued that the testimony was properly admitted because it "demonstrates a common scheme and motive."

## Scheme, plan, or system

**{¶18}** In regard to other-act evidence, the Ohio Supreme Court has warned that "we . . . must be careful . . . to recognize the distinction between evidence which shows that a defendant is the *type* of person who might commit a particular crime and evidence which shows that a defendant *is* the person who committed a particular crime." *State v. Lowe*, 69 Ohio St. 3d 527, 530 (1994). According to the Ohio Supreme Court, as proof of identity, "[e]vidence of a defendant's scheme, plan, or system in doing an act can be relevant for two reasons: (1) the other acts are part of one criminal transaction such that they are inextricably related to the charged crime, and (2) a common scheme or plan tends to prove the identity of the perpetrator." *State v. Schaim*, 65 Ohio St. 3d 51, 63 n.11 (1992) (citing *State v. Curry*, 43 Ohio St. 2d 66, 72-73 (1975)). Thus, evidence of a scheme, plan, or system tends to prove the identity of the perpetrator either because the other act is part and parcel of the plan to commit the charged crime or because the other act is so similar to the crime charged and sufficiently idiosyncratic that it tends to prove the same person committed both acts. If the other act is part of the plan that culminated in the charged crime, it is inextricably related and need not be at all similar to it. For instance, evidence that the defendant stole a gun the day before he shot someone with it would be relevant in defendant's murder trial even though he is not charged with theft of the gun and theft and murder are not similar crimes. On the other hand, evidence of a scheme, plan, or system may tend to prove that the defendant committed the crime charged because the other act he is known to have committed is so similar and idiosyncratic that it tends to prove he is the most

likely perpetrator of the charged crime. For instance, a serial killer who attacks female prostitutes from a certain neighborhood of a certain city and mutilates the abdomen of each victim before dumping the body near the same riverbank leaves behind evidence of an idiosyncratic pattern that tends to show that the same person committed each murder. Evidence that the defendant is known to have committed two such idiosyncratic crimes in the recent past would be admissible in a trial of the man for a third murder following that same pattern. The Ohio Supreme Court has held that, under either scenario, evidence of a scheme, plan, or system cannot be relevant to prove identity unless the identity of the perpetrator is actually being disputed in the case. *Id.* (citing *Curry*, 43 Ohio St. 2d at 72-73).

{¶19} The Ohio Supreme Court has described inextricably related other acts evidence as that which "form[s] part of the immediate background of the alleged act which forms the foundation of the crime charged[.]" *State v. Lowe*, 69 Ohio St. 3d 527, 531 (1994) (quoting *State v. Curry*, 43 Ohio St. 2d 66, 73 (1975)). As examples of such "inextricably related" evidence, the Court suggested evidence that the defendant had trespassed on the murder victim's property on the evening of the attack, evidence that he had tried to remove something from the crime scene, or evidence that he had threatened a witness. *Id.* Generally speaking, if evidence of a scheme, plan, or system is inextricably related to the charged crime, "it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other act[ ]." *State v. Lytle*, 48 Ohio St. 2d 391, 403 (1976), vacated in part on other grounds, 438 U.S. 910 (1978) (quoting *Curry*, 43 Ohio St. 2d at 73).

{¶20} The comment that Sarah described did not form part of the immediate background of the crimes charged and is not part of a single criminal transaction involving the alleged rapes of her sister. It was not part of the plan that culminated in the alleged rapes of S.K. According

to the testimony, Mr. Morris made the inappropriate comment to Sarah two years after the first indicted rape of S.K. and six or eight months before the second indicted rape. There is nothing about the incident described by Sarah that facilitated the alleged rapes of S.K. and nothing about that evidence is necessary or even helpful to prove that Mr. Morris raped S.K. in April 2003 and again in late 2005. S.K. was not present to witness Mr. Morris's comment to Sarah and was apparently not even told that it happened. The alleged habitual molestation of S.K. is wholly unrelated to Mr. Morris's single drunken comment to Sarah. As the behavior is really not related at all, it cannot reasonably be described as 'inextricably related." *State v. Schaim*, 65 Ohio St. 3d 51, 63 n.11 (1992) (citing *State v. Curry*, 43 Ohio St. 2d 66, 72-73 (1975)).

{¶21} If evidence of a scheme, plan, or system is not part of the immediate background of the crime charged, it may still be admissible to prove identity because it is so similar to the crime charged in some idiosyncratic way that it tends to show that the same person committed both acts. This is because proof of a particular modus operandi or a unique scheme, plan, or system of doing something can provide "a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, [could] be used to identify the defendant as the perpetrator." *State v. Myers*, 97 Ohio St. 3d 335, 2002-Ohio-6658, ¶ 104 (quoting *State v. Lowe*, 69 Ohio St. 3d 527, 531 (1994)).

{¶22} There is no evidence of a common scheme or plan in this case because there are no such similarities between Mr. Morris's alleged conduct with Sarah and his alleged conduct with S.K. Neither the individuals targeted nor the methods Mr. Morris allegedly used to engage or attempt to engage in sexual relations with them are similar. Sarah's testimony did not have any tendency to show a common scheme, plan, system, motive or intent for Mr. Morris raping a child primarily because Sarah was not a child when Mr. Morris allegedly expressed a sexual

interest in her. Proving that a man is sexually attracted to an adult woman has no tendency to prove that he is sexually attracted to little girls under the age of ten or thirteen, even if the two are sisters.

{¶23} Moreover, the single drunken comment allegedly made to Sarah was not at all similar to the six-year pattern of fondling and rape described by S.K. There was nothing idiosyncratic about the comment or the situation surrounding its delivery that could reasonably be deemed to create "a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, [could] be used to identify the defendant as the perpetrator." *State v. Myers*, 97 Ohio St. 3d 335, 2002-Ohio-6658, ¶ 104 (quoting *State v. Lowe*, 69 Ohio St. 3d 527, 531 (1994)). Sarah's testimony did not have any tendency to prove that Mr. Morris engaged in a similar pattern of conduct with her as he had allegedly followed with S.K. S.K. did not testify that Mr. Morris ever approached her while drunk or in any way similar to what Sarah described. According to S.K., Mr. Morris never grabbed her or said anything similar to what he allegedly said to Sarah. S.K. testified that Mr. Morris spent time playing with her and entertaining her when they first met before slowly increasing their physical proximity and the sexual nature of their encounters. On the other hand, Sarah's testimony was that Mr. Morris was a great stepfather who had never said or done anything inappropriate to her when she was a minor. Her testimony was that his inappropriate behavior with her was limited to one incident, which occurred after she was married, in which he abruptly grabbed her and drew her to him one evening while he was drunk.

{¶24} Regardless of how similar and idiosyncratic the conduct, however, other-act evidence tending to prove identity is not admissible unless identity is actually being disputed in the case. *State v. Schaim*, 65 Ohio St. 3d 51, 63 n.11 (1992) (citing *State v. Curry*, 43 Ohio St.

2d 66, 72-73 (1975); *State v. Lowe*, 69 Ohio St. 3d 527, 531 (1994); R.C. 2945.59 (permitting other-act evidence only "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material[.]"). "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime. In that event other act evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person, whoever he or she may be, committed both crimes." *State v. Smith*, 84 Ohio App. 3d 647, 666 (2d Dist. 1992).

{¶25} In *State v. Curry*, 43 Ohio St. 2d 66 (1975), the Ohio Supreme Court held that other-act evidence offered to show a common scheme, plan, or system was not admissible to prove identity because identity was not being disputed in that case. *Id.* at 73. In *Curry*, the defendant admitted that he drove the victim home on the date in question, but denied having sexual contact with her. In that situation, the Ohio Supreme Court determined that the defendant's denial "did not raise an identity question; it created, instead a factual dispute revolving around [his] conduct with [the victim] during the trip . . . ." *Id.*; *State v. Wilkins*, 135 Ohio App. 3d 26, 31 (9th Dist. 1999) (holding identity not at issue in state's case against defendant who admitted driving rape victim to the store and never raised defense of mistaken identity); *State v. Miley*, 5th Dist. Nos. 2005-CA-67, 2006-CA-14, 2006-Ohio-4670, ¶ 72-73 (holding identity not at issue in sexual molestation case in which brothers accused family friend because "[i]f a crime did in fact occur, no dispute exists that appellant was the perpetrator."). If identity is not in dispute, then evidence of identity is not "relevant to making any fact that is of

consequence to the determination of the action more or less probable than it would be without the evidence." *State v. Williams*, ___ Ohio St. 3d ___, 2012-Ohio-5695, ¶ 20.

{¶26} Identity was not disputed in this case. The main issue at trial was S.K.'s credibility. If the crimes occurred at all, there was no question about who committed them. *See State v. Curry*, 43 Ohio St. 2d 66, 73 (1975); *State v. Miley*, 5th Dist. Nos. 2005-CA-67, 2006-CA-14, 2006-Ohio-4670, ¶ 72-73. S.K. had lived in the same house with Mr. Morris for years. She had no trouble identifying him. There was no evidence tending to indicate that she was at all confused about the identity of the man whom she says repeatedly fondled and raped her in her own home over the course of several years. The defense theory was that the events S.K. described never happened, not that someone else committed them. Thus, identity was not at issue in this case and evidence of a scheme, plan, or system could not be admitted to prove identity no matter how similar to the crimes charged because identity is not a fact that is of consequence to the determination of the action. *State v. Schaim*, 65 Ohio St. 3d 51, 63 n.11 (1992) (citing *Curry*, 43 Ohio St. 2d at 73); *State v. Lowe*, 69 Ohio St. 3d 527, 531 (1994); *State v. Cullers*, 2d Dist. No. 18602, 2001 WL 1388506, *9-10 (Nov. 9, 2001) (concluding that identity was not at issue in child molestation case, even in light of defendant's claim that children's uncle may have molested them, because victims knew alleged perpetrator and alleged that all incidents occurred at his house while he was babysitting them).

{¶27} The Ohio Supreme Court has limited its holding in *Curry* and has explained that, under Evidence Rule 404(B), "evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, even if the identity of an accused or the immediate background of a crime is not at issue." *State v. Williams*, ___ Ohio St. 3d ___, 2012-Ohio-5695, ¶ 2. In *Williams*, the defendant was accused of engaging in sexual relations with a fourteen-year-

old boy he had mentored through his church. The Supreme Court held that evidence that the defendant had had a similar relationship with a different teenage boy he had coached on a swimming team twelve years earlier was admissible under Evidence Rule 404(B) "to show the plan of the accused and the intent for sexual gratification." *Id.* at ¶ 25. In *Williams*, the evidence indicated that the defendant had targeted young, fatherless males "to gain their trust and confidence and groom them for sexual activity with the intent of sexual gratification." *Id.* Mr. Williams befriended the victim, often bought him gifts, and paid him to do odd jobs at Mr. Williams's house. The other-act evidence showed that Mr. Williams had "exhibited a pattern of isolating certain types of victims and then abused a position of authority to engage in grooming behaviors for the purpose of sexual gratification . . . ." *Id.* at ¶ 11. Furthermore, part of Mr. Williams's defense was to claim that he was only sexually attracted to women. The Supreme Court overruled the Eighth District's en banc decision and held that the other-act evidence was admissible. *Id.* at ¶ 25. The Court held the other-act evidence tended to prove that Mr. Williams derived sexual gratification from engaging in sexual relations with teenage boys and that he had a certain plan or method of targeting a certain group of victims by gaining their trust through the role of an authority figure before abusing them. *Id.*

{¶28} The facts of *Williams* are distinguishable from this case. Sarah's testimony was not admissible because there is a fundamental difference between a man's desire to engage in sexual activity with his wife's adult daughter and his desire to rape his wife's little girl. The other-act evidence did not tend to show Mr. Morris's identity as the perpetrator, both because identity was not disputed and because there is nothing idiosyncratic or even similar about the two allegations. There was no evidence of a plan or particular method Mr. Morris engaged in for the purpose of abusing young girls or to gain access to a certain class of victims. One cannot

reasonably conclude that the evidence offered by Sarah has any tendency to prove that Mr. Morris engaged in a similar plan or method of conduct with the two sisters or that his alleged conduct with Sarah has some tendency to prove his motive or intent on certain occasions to derive sexual gratification from a child. Thus, Sarah's testimony could not reasonably be deemed admissible under Evidence Rule 404(B) to prove motive, intent, plan, or identity.

## Other permissible uses

**{¶29}** No other support for the trial court's determination that the evidence of the incident with Sarah could have been admitted without violating Evidence Rule 404(B) has been suggested by the trial court, the State, or the dissent, and this Court cannot think of any permissible use for it. The evidence was not admissible to prove that Mr. Morris had an opportunity to engage in sexual conduct with his stepdaughter. Mr. Morris's single drunken comment to Sarah has no tendency to prove that he had the opportunity to rape S.K. The evidence showed that S.K. was not present when Mr. Morris allegedly grabbed Sarah, and nothing about that incident provided Mr. Morris an opportunity to rape S.K. He had every opportunity to rape S.K. because he lived in the same house with her during the entire period of the alleged abuse. Several witnesses testified that Mr. Morris and S.K. had always had a close relationship, and Mr. Morris did not deny that. In fact, his lawyer cross-examined S.K. about her spending time with Mr. Morris and even willingly leaving the house alone with him long after the first alleged rape. There could be no doubt that Mr. Morris had ample opportunity to rape her. The question at trial was whether she was telling the truth when she claimed that he had, in fact, done so. Sarah's testimony had no tendency to prove that Mr. Morris had an opportunity to rape S.K. in April 2003 and near Halloween 2005.

**{¶30}**  Other-act evidence may be relevant to prove a defendant's preparation to commit the charged crime.  For example, despite the lack of similarity of the conduct, evidence that a defendant had stolen a gun the day before using it to shoot his neighbor would be relevant to prove preparation for murder even though the defendant was not charged with theft.  Similarly, evidence that a defendant had stolen the getaway car before robbing a bank would be relevant to prove preparation for the robbery even if the defendant is not charged with stealing the car.  *See* James W. McElhaney, *McElhaney's Trial Notebook*, 292-93 (4th Ed. 2005).

**{¶31}**  Evidence that Mr. Morris made a potentially sexual comment to his adult stepdaughter in the spring of 2005 does not have any tendency to prove that Mr. Morris was preparing to rape S.K.  It certainly cannot be evidence of preparation to commit a crime that had already been committed.  S.K. testified that Mr. Morris initiated sexual contact with her approximately thirty times, but that he had vaginal intercourse with her about 10 times starting when she was in first grade and ending when she was 13 years old.  The two indicted offenses, for which she recalled fairly specific dates, occurred in April 2003 and near Halloween 2005.  Evidence of his alleged comment to Sarah has no tendency to prove that Mr. Morris was in any way preparing to rape S.K., whom he had allegedly already been raping and molesting for at least two years.

**{¶32}**  The remaining options listed in Rule 404(B) for proper use of other-acts evidence are if the evidence has some tendency to prove knowledge or absence of mistake or accident.  Mr. Morris's defense was based on the theory that he never touched S.K. in an inappropriate manner.  His defense was that she fabricated the story because she was a troubled teenager who was angry at him for leaving her mother and causing them to lose the family home to foreclosure.  The statute under which he was convicted provides that, regardless of whether the

offender knows the age of the victim, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender . . . when . . . [t]he other person is less than thirteen years of age[.]" R.C. 2907.02(A)(1)(b). Therefore, it would have done Mr. Morris no good to claim that he did not know that S.K. was under the age of thirteen. Mr. Morris did not claim that he accidently raped the child or that he mistakenly had sexual intercourse with her. There was no dispute about whether Mr. Morris knowingly raped S.K., had specialized knowledge facilitating the rapes, or whether he acted with the requisite criminal intent. *See* 1 Mueller & Kirkpatrick, *Federal Evidence*, Section 4:34 (3d Ed. 2012) (explaining the difference between the use of other acts to prove intent and knowledge under Rule 404(b) of the Federal Rules of Evidence). Mr. Morris simply denied the crimes occurred.

{¶33} Under the circumstances, the evidence could not reasonably be said to be permissibly used for any of the purposes mentioned in Evidence Rule 404(B), and the trial court did not assign any other purpose. The only plausible use for the evidence presented by Sarah was to draw the impermissible character inference forbidden by Evidence Rule 404(B): to show that Mr. Morris is the type of sexually perverted man who would like to engage in sexual activity with his wife's adult daughter and, therefore, is likely to have raped her little girl on the dates in question. *See State v. Deyling*, 9th Dist. No. 2672-M, 1998 WL 46753, *2 (Jan. 28, 1998) (excluding evidence in domestic violence trial of prior incident when defendant allegedly struck the victim during an argument because the "only plausible use" "was to draw the impermissible character inference").

Abuse of discretion

{¶34} The evidence of Mr. Morris making a sexually suggestive comment to Sarah was "obviously intended to prove the character of the appellant in order to show that he acted in

conformity therewith concerning the crimes of which he was convicted." *State v. Price*, 80 Ohio App. 3d 35, 41 (3d Dist. 1992) (holding that evidence that defendant had sexual intercourse with 15-year-old victim's older sister was "clearly inadmissible for any purpose" in rape trial of victim's stepfather). Such evidence is inadmissible under Evidence Rule 404(B) because it would be easy for a jury to assume that the type of man who would express an interest in having sex with his wife's adult daughter, could be just the type of man who would have the urge to sexually molest a young child, especially if the young child is also his wife's daughter.

**{¶35}** That is precisely the leap in logic that Rule 404 is designed to prevent. *State v. Curry*, 43 Ohio St. 2d 66, 68 (1975). "Such evidence is inadmissible . . . [because] it is both legally irrelevant and highly prejudicial." *State v. Bronner*, 9th Dist. No. 20753, 2002-Ohio-4248, ¶ 90. "It poses a 'temptation . . . for the jury to try the case on evidence of character rather than on evidence of guilt . . . [because] it becomes difficult for the jury not to speculate that since the defendant . . . is a bad person, he probably committed the present crime.'" *Id.* at ¶ 90-91 (quoting *State v. Griffin*, 142 Ohio App. 3d 65, 71 (1st Dist. 2001)). "Rule 404(B) thus operates as a specialized application of the principle in Rule 403 that unfairly prejudicial evidence should be excluded." Glen Weissenberger, *Ohio Evidence Treatise*, Section 404.22, at 73 (2011). "[Extrinsic-act evidence is excluded] not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take proof of it as justifying a condemnation irrespective of guilt of the present charge." *Id.* (quoting 1A Wigmore, *Evidence*, Section 58.2). Sarah's testimony had no probative value other than to encourage the jury to make the inference prohibited by Rule 404 of the Ohio Rules of Evidence.

**{¶36}** "An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *Kish v. Kish*, 9th Dist. No. 12CA010185, 2012-Ohio-5430, ¶ 9 (citing *Blakemore v. Blakemore,* 5 Ohio St. 3d 217, 219 (1983)). "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, ¶ 14. "'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.'" *Id.* (quoting *AAAA Ent. Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St. 3d 157, 161 (1990)).

**{¶37}** The trial court's decision to admit evidence that Mr. Morris made a suggestive comment to his adult stepdaughter years after he allegedly began molesting and raping his minor stepdaughter lacks a sound reasoning process in light of Evidence Rule 404(B). The only "reasoning process" evident in the record is that the trial court deemed the incident with Sarah "similar enough" to the crimes charged. The trial court's ruling admitting the evidence of Mr. Morris's inappropriate comment to Sarah was unreasonable as it was not based on a sound reasoning process.

**{¶38}** Even if the evidence could be reasonably deemed admissible under the first two steps of the Ohio Supreme Court's test for admissibility of other-act evidence, it fails to satisfy the third prong because it should have been excluded under Evidence Rule 403(A). "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A).

**{¶39}** In a case with no eye-witnesses beyond the victim and no physical evidence or confession of any kind, the jury had to determine the case largely based on credibility. The jury learned that, several months after her stepfather moved out and allegedly caused the loss of the family home to foreclosure, a troubled teenager accused him of molesting and raping her over the course of several years. To that, the State added evidence that Mr. Morris once made a suggestive comment to his adult stepdaughter while he was drunk. In this situation, Sarah's testimony was highly prejudicial and could have tipped the credibility scale in favor of S.K.

**{¶40}** Although the trial court gave a general limiting instruction to the jury, the State spent much of its time in closing argument trying to convince the jury to use Sarah's testimony in precisely the manner forbidden by Evidence Rule 404(B). During rebuttal close, the prosecutor went so far as to actually equate the sexual comment allegedly made to the adult sister to the alleged rape of the younger sister. The prosecutor told the jury that, although child molestation usually happens in private, ensuring a lack of eyewitnesses, in this case there was evidence of "it happening to [S.K.'s older sister]." Thus, the State asked the jury to convict Mr. Morris of raping S.K., not because of other-act evidence that tended to show he had similarly groomed other little girls for his own sexual pleasure, but because they heard evidence that he had once made an inappropriate comment to the child's adult sister. Evidence Rule 404(B) forbids that leap in logic. That is, such evidence is not admissible to prove that Mr. Morris is the type of man who would be willing to cross that moral boundary with his wife's adult daughter so he is probably also the type of man who would rape his wife's nine or twelve-year-old daughter. The trial court abused its discretion in admitting the evidence of the comment Mr. Morris made to Sarah because the decision lacks a sound reasoning process.

KICKING THE DOG

{¶41} Mr. Morris has also argued that the trial court incorrectly admitted evidence about him kicking the family dog if his wife refused to have sex with him. S.K.'s mother, who was once Mr. Morris's wife, testified that he wanted to have sex with her every day and would become verbally abusive and kick the family dog if she refused. Mr. Morris objected to this testimony at trial. The trial court overruled the objection, but permitted a continuing objection to the line of inquiry regarding the sexual relationship between Mr. Morris and S.K.'s mother. That line of inquiry included testimony about Mr. Morris ejaculating into towels during sex and kicking the dog if she refused to have sex with him. Other than stating that testimony on the topic "could be relevant" and that it fell under Evidence Rule 404(B), the trial court did not explain its reasons for overruling the objection. On appeal, the State has argued that the testimony was admissible because it showed "[a] motive and common plan" for rape. According to the State, Mr. Morris's "insatiable sexual appetite . . . is clearly the motive for [Mr.] Morris's sexual abuse of S.K." Mr. Morris has argued that his former wife's testimony on this topic should have been excluded under Evidence Rule 404.

{¶42} The State presented no evidence that an unfulfilling sexual life with one's spouse has a tendency to show motive for the rape of a child. Further, it presented no evidence that men with voracious sexual appetites are sexually attracted to young children. What is more, even if evidence of Mr. Morris's voracious sexual appetite were admissible, the added fact that he took out his sexual frustration by kicking the dog goes far beyond tending to prove that voracious appetite. The kick-the-dog evidence tended to show that Mr. Morris was prone to act out if his wife refused to have sex with him every day. The only possible reason for introducing that evidence was to demonstrate his character, that is, that he was sexually frustrated, mean, and

aggressive. The obvious reason to present that evidence was to encourage the jury to conclude that Mr. Morris acted in conformity with that character by committing the rapes with which he had been charged.

{¶43} The testimony about Mr. Morris kicking the family dog out of sexual frustration when his wife refused to have sex with him did not tend to prove any of the permissible topics enumerated in Rule 404(B) of the Ohio Rules of Evidence. Although the list of exceptions in Rule 404(B) is not exclusive, the trial court did not offer any additional permissible use for this other-act evidence under the circumstances. "The ultimate issue is a determination of the way in which the extrinsic act is relevant, because the Rule specifically authorizes the use of extrinsic acts where the evidence is offered to prove a relevant fact other than propensity and conforming conduct." Glen Weissenberger, *Ohio Evidence Treatise*, Section 404.23, at 76 (2011); *see also State v. Williams*, ___ Ohio St. 3d ___, 2012-Ohio-5695, ¶ 20. Although the trial court is not required to include a detailed analysis in the record, without any indication of any reasoning process, this Court is unable to analyze the soundness of the trial court's thinking beyond an analysis of the rule itself. This Court cannot think of any relevant permissible use for evidence that Mr. Morris kicked the dog when his wife refused to have sex with him.

{¶44} Based on the record before this Court, it appears that the evidence that Mr. Morris would kick the dog out of sexual frustration was admitted solely to prove that Mr. Morris would aggressively act out if his voracious sexual appetite was not satisfied on a daily basis, leading to the obvious inference that he acted in conformity with that character trait by raping his stepdaughter on the two occasions noted in the indictment. Thus, the trial court improperly exercised its discretion by admitting the evidence that Mr. Morris kicked the dog out of sexual frustration. *See* Evid. R. 404(B).

USING TOWELS DURING SEXUAL INTERCOURSE

**{¶45}** S.K. testified that, every time Mr. Morris ejaculated while molesting her, he would quickly cover his penis with a towel. Mr. Morris has argued that S.K.'s mother, who was married to him at the time of the alleged incidents, should not have been permitted to testify that "[w]hen [Mr. Morris] and I had sex, he would sometimes [ejaculate] in a towel or a T-shirt or whatever was around." She went on to say that she did not understand why he would do that because he knew she could not get pregnant. Mr. Morris objected at trial, and the State argued that the testimony should be admitted under Evidence Rule 404(B) because it "goes toward modus operandi, knowledge and other acts of evidence." The trial court admitted the testimony, but did not explain a basis for overruling the objection except to mention "[Evidence Rule] 404(B)." On appeal, Mr. Morris has argued that the trial court should not have allowed the mother's testimony on this point because it was not admissible under Evidence Rule 404(B) and 403(A).

**{¶46}** The State has argued that the testimony was admissible because it is evidence of "idiosyncratic behavior that shows a common plan" and "his modus operandi for disposal of semen . . . [that is,] [e]xcept when having sex with his wife, [Mr.] Morris always ejaculates into a towel." The State's argument is based on a misunderstanding of S.K.'s mother's testimony. What she said was that Mr. Morris "sometimes" ejaculated into a towel when they did have sex – not at times other than when they had sex.

**{¶47}** In any event, the testimony does not run afoul of Evidence Rule 404 because it is not "evidence of a person's character or a trait of character." Evid. R. 404(A); *see also State v. Shedrick*, 61 Ohio St. 3d 331, 337 (1991) (explaining that Evidence Rule 404 excludes evidence that "tends to show [the defendant's] bad character."). S.K.'s mother's testimony about Mr.

Morris unexpectedly ejaculating into towels during sex implied nothing about his character. The testimony was relevant because S.K. had previously said that Mr. Morris had always ejaculated into a towel when molesting her. Evid. R. 401. It could hurt Mr. Morris's case because it provided some corroboration of S.K.'s allegation that she had been involved in a sexually intimate situation with Mr. Morris. As relevant evidence, it was admissible unless otherwise objectionable. Evid. R. 402. It was not objectionable character evidence under Rule 404.

{¶48} Mr. Morris has also argued that this testimony was "inflammatory, confusing, [and] unreliable" and that any probative value was substantially outweighed by the danger of unfair prejudice. *See* Evid. R. 403(A). The testimony was clear, and it was not inherently unreliable. The jury was capable of determining what weight, if any, it deserved in light of the other evidence in the case. Admission of the testimony, harmful as it may have been to Mr. Morris's case, was not unfairly prejudicial and was not a violation of Evidence Rule 403(A).

{¶49} This Court has not considered the application of Ohio's rape shield law to this testimony because Mr. Morris neither raised an objection in the trial court nor an argument on appeal based on it. *See* R.C. 2907.02(D). To the extent that it addressed the mother's testimony regarding Mr. Morris ejaculating into towels, the first assignment of error is overruled because the trial court correctly overruled Mr. Morris's objection to the testimony, albeit on an incorrect basis. *See State v. Campbell*, 90 Ohio St. 3d 320, 329 (2000).

### HARMLESS ERROR

{¶50} Having determined that the trial court erroneously admitted evidence of two instances of Mr. Morris's other acts in violation of Rule 404(B) of the Ohio Rules of Evidence, this Court must decide whether the errors were harmless. Under Rule 52(A) of the Ohio Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance which does not affect

substantial rights shall be disregarded." The Ohio Supreme Court has repeatedly held that "[e]rror in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction." *State v. Rahman*, 23 Ohio St. 3d 146, 151 (1986) (quoting *State v. Bayless*, 48 Ohio St. 2d 73, 106 (1976), vacated in part on other grounds, 438 U.S. 911 (1978)). It has further written that, "[i]n order to hold the error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt." *Bayless*, 48 Ohio St. 2d at 106 (citing *State v. Abrams*, 39 Ohio St. 2d 53 (1974); *State v. Crawford*, 32 Ohio St. 2d 254 (1972); *Chapman v. California*, 386 U.S. 18 (1967); *Harrington v. California*, 395 U.S. 250 (1969)). The standard applied by the Ohio Supreme Court in *Bayless* was derived from United States Supreme Court case law describing the federal constitutional harmless-error standard. *Id.* (citing *Chapman*, 386 U.S. 18; *Harrington,* 395 U.S. 250). The Ohio Supreme Court has applied this test to evaluate whether an error in improperly admitting evidence of a defendant's other acts was harmless, and this Court has followed suit. *Id.*; *see also State v. Treesh*, 90 Ohio St. 3d 460, 483 (2001); *State v. Lytle*, 48 Ohio St. 2d 391, 403 (1976); *State v. Bronner*, 9th Dist. No. 20753, 2002-Ohio-4248, ¶ 96; *State v. Deyling*, 9th Dist. No. 2672-M, 1998 WL 46753, *2 (Jan. 28, 1998).

{¶51} In evaluating the impact of improperly admitted other-acts evidence, the appellate court must consider "[t]he severity of [the improper] reflections upon the defendant's credibility and character . . . in relation to the other evidence in the case." *State v. Bayless*, 48 Ohio St. 2d 73, 107 (1976). In *Bayless*, the Court determined that the error was harmless beyond a reasonable doubt because "[t]he mass of evidence in the case contradicted and impeached [the defendant's] testimony so thoroughly that the effect of the rebuttal testimony upon his credibility appears insignificant." *Id.* Thus, admission of improper evidence is harmless if, as is often the

case, "the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt."
*State v. Williams*, 6 Ohio St. 3d 281, 290 (1983) (quoting *Harrington v. California,* 395 U.S.
250, 254 (1969)); *but see State v. Brown*, 100 Ohio St. 3d 51, 2003-Ohio-5059, ¶ 25; *State v.
Webb*, 70 Ohio St. 3d 325, 335 (1994); *State v. Davis*, 44 Ohio App. 2d 335, 348 (8th Dist.
1975). Regardless of the fact that courts have sporadically applied a less stringent harmless-error
standard in some cases involving non-constitutional errors in the admission of evidence, the
higher standard applies in this case because "the injection of . . . inflammatory . . . material"
violated Mr. Morris's right to a fair trial "as that term is understood under the [D]ue [P]rocess
[C]lause of the [F]ourteenth [A]mendment." *Davis*, 44 Ohio App. 2d at 348.

**{¶52}** The application of the harmless error rule is simple if, in the absence of all
erroneously admitted evidence, there remains "overwhelming" evidence of guilt. *State v.
Williams*, 6 Ohio St. 3d 281, 290 (1983) (quoting *Harrington v. California,* 395 U.S. 250, 254
(1969)). The application is more difficult in a case such as this "in which the question of guilt or
innocence is a close one." *Chapman v. California*, 386 U.S. 18, 22 (1967). In close cases,
"harmless-error rules can work very unfair and mischievous results when . . . highly important
and persuasive evidence . . . though legally forbidden, finds its way into a trial . . . ." *Id.*

**{¶53}** Setting aside the erroneously admitted character evidence, there is not
overwhelming evidence of Mr. Morris's guilt in this case. In the absence of any confession,
physical evidence, or eyewitnesses other than S.K. to sexual conduct or even sexual contact
between Mr. Morris and S.K., the State's case rested largely on S.K.'s credibility. Although
there was corroborating circumstantial evidence offered by S.K.'s mother and sister, each of
whom testified that they had once seen a suspicious-looking situation, neither was able to testify
as an eyewitness to any acts of molestation or rape. Various witnesses testified about S.K.'s

emotional problems and to certain times over the years when S.K. seemed to be struggling with a secret that she was unable to reveal. But S.K. admitted that her emotional problems were not entirely caused by Mr. Morris and that she had been depressed before her mother met him.

{¶54} S.K.'s mother's testimony about Mr. Morris's odd behavior during sexual intercourse provided some circumstantial corroboration of S.K.'s testimony. S.K.'s credibility was best supported by her own testimony describing how her relationship with Mr. Morris went through phases that seemed to move toward sexualization over time as bolstered by her counselor's testimony that her account was consistent with the "grooming" behavior of a pedophile preparing a child for molestation.

{¶55} Regardless of whether the verdict could have withstood a challenge based on the manifest weight of the evidence, the question of whether the errors were harmless requires a different analysis. As the Ohio Supreme Court has written, "[the appellate court's] role upon review [in such a] case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury." *State v. Rahman*, 23 Ohio St. 3d 146, 151 n.4 (1986). "It is not the appellate court's function to determine guilt or innocence . . . ." *Id.* (quoting *United States v. Hasting*, 461 U.S. 499, 516 (1983) (Stevens, J., concurring)). "[T]he question is, not were [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision." *Id.* (quoting *Hasting*, 461 U.S. at 516 (Stevens, J., concurring)). Highly inflammatory evidence, erroneously admitted, can make it easy for a jury to believe the State's theory and the State's witnesses over those of the defense, especially in a close case.

{¶56} The "danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of

whether he . . . committed the crime charged in the indictment . . . is particularly high when the other acts are very similar to the charged offense or of an inflammatory nature . . . ." *State v. Miley*, 5th Dist. Nos. 2005-CA-67, 2006-CA-14, 2006-Ohio-4670, ¶ 58 (citing *State v. Curry*, 43 Ohio St. 2d 66, 68 (1975); *State v. Schaim*, 65 Ohio St. 3d 51, 60 (1992)). Sexually deviant acts, especially those against children, carry a severe social stigma, leading to an increased risk that other sexually deviant acts by the defendant will influence a jury to convict because it assumes the defendant is a bad man. The evidence that Mr. Morris grabbed his adult stepdaughter, pulled her toward him, and made a sexually charged comment to her was highly inflammatory, especially in light of the fact that Mr. Morris was charged with raping her younger sister. The evidence that Mr. Morris would become verbally abusive toward his wife and even kick the dog if she refused to have sex with him every day is less inflammatory, but was similarly aimed at convincing the jury that Mr. Morris is a sex-crazed pervert.

**{¶57}** Although Sarah testified that in all her years of living with Mr. Morris, that drunken comment was the only inappropriate advance he ever made toward her, the State did its best to convince the jury that her testimony was evidence of Mr. Morris's motive and intent and plan to rape a little girl. During the State's closing argument, the prosecutor advised the jury that, "if you want to know a little bit about [Mr. Morris's] motives and his intent and his intent for [S.K.], just look at how he treated his other stepdaughter . . . ." Later in closing argument, the prosecutor said that S.K.'s story is "corroborated by the sister who had an incident with him that showed a similar plan and preparation and intent."

**{¶58}** The prosecutor directly asked the jury to equate the sexual comment allegedly made to the adult sister to the alleged rape of the younger sister. The prosecutor told the jury that there was evidence of "it happening to [S.K.'s older sister]." Thus, the State blatantly attempted

to persuade the jurors that they should convict Mr. Morris of raping the child victim based on evidence that he had done "it" to her older sister. In fact, the jury had heard absolutely no evidence that Mr. Morris had raped Sarah when Sarah was a child. They also had not heard any evidence that he had raped Sarah when she was an adult. Even so, the State used that improperly admitted evidence to attempt to persuade the jury to make the very leap in logic that is forbidden by Rule 404(B) of the Ohio Rules of Evidence. That is, if Mr. Morris is the type of man who would be willing to cross that moral boundary with his wife's adult daughter, then the jury should also believe he is "the type of person" who would rape his wife's nine or twelve-year-old daughter. *State v. Lowe*, 69 Ohio St. 3d 527, 530 (1994).

**{¶59}** The effect of the errors in this case is extensive because the inflammatory material was not limited to a brief, isolated comment. The State elicited testimony regarding the incident between Mr. Morris and Sarah from three witnesses, and referenced it on seven different occasions during closing argument, including referring to Sarah as Mr. Morris's "victim." This Court cannot say that "there is no reasonable possibility that the evidence may have contributed to the . . . conviction." *State v. Bayless*, 48 Ohio St. 2d 73, 106 (1976). It seems quite likely that the average juror would have considered the erroneously admitted evidence and would have found it easy to believe that Mr. Morris, being sexually frustrated and perverted, was likely guilty of raping his young stepdaughter. The improperly admitted other-acts testimony put inflammatory evidence of Mr. Morris's character before the jury. In a case based largely on S.K.'s credibility, evidence that Mr. Morris had once propositioned her older sister had a great probability of tipping the scale in favor of S.K.'s credibility and against Mr. Morris's. Based on a review of the entire record, this Court cannot "declare a belief that the error was harmless beyond a reasonable doubt." *Id.* (citing *State v. Abrams*, 39 Ohio St. 2d 53 (1974); *State v.*

*Crawford*, 32 Ohio St. 2d 254 (1972); *Chapman v. California*, 386 U.S. 18 (1967); *Harrington v. California*, 395 U.S. 250 (1969)).  To the extent Mr. Morris's first assignment of error is addressed to the propositioning-of-Sarah testimony and the kicking-the-dog testimony, it is sustained.

### CONCLUSION

**{¶60}**  This Court must reverse Mr. Morris's convictions because the trial court abused its discretion by erroneously admitting evidence of other acts that did not fit within what is permissible under Rule 404(B) of the Ohio Rules of Evidence or any other permissible purpose. The State's repeated references to improper character evidence violated Mr. Morris's right to a fair trial.  There is a reasonable possibility that the improper evidence may have contributed to the conviction and this Court cannot declare a belief that the errors were harmless beyond a reasonable doubt.  This Court's resolution of the first assignment of error is dispositive, rendering the other assignments of error moot, so they will not be addressed.  *See* App. R. 12(A)(1)(c).  Therefore, the judgment of the Medina County Common Pleas Court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

CARR, P. J.
DISSENTING.

{¶61} I respectfully dissent.

{¶62} I would overrule Morris' first assignment of error in its entirety because I do not believe that the trial court abused its discretion when it admitted evidence relating to the incidents involving Morris' proposition of Sarah and his tendency to kick the family dog pursuant to Evid.R. 404(B).

{¶63} However, assuming arguendo that the trial court erred by admitting this evidence, I would conclude that it was harmless error because the remaining evidence constituted overwhelming proof of Morris' guilt. *See State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. The victim's detailed and consistent testimony established that Morris repeatedly raped her over a period of seven or eight years. She described how Morris' behaviors

towards her evolved in a manner that the victim's counselor testified were consistent with the ways in which a pedophile would groom his victim to facilitate future molestation. In addition, this Court has consistently held that "[i]n sex offense cases, *** the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. Thus, the testimony of the victim may be enough, and does not need corroborating evidence." (Internal citations omitted.) *State v. Melendez*, 9th Dist. No. 08CA009477, 2009-Ohio-4425, ¶ 15, quoting *State v. Willard*, 9th Dist. No. 05CA0096-M, 2006-Ohio-5071, ¶ 11. The lack of physical evidence in a case where such evidence was unlikely due to the passage of time does not detract from the victim's testimony. In addition, although there were no third-party eye witnesses to any acts of rape, Mother testified that she observed what she believed to be inappropriate sexual activity between Morris and S.K. Accordingly, because the evidence of Morris' guilt was overwhelming based on other evidence, the admission of the challenged other-act evidence was harmless error, if it constituted error at all. Accordingly, I would overrule Morris' first assignment of error.

{¶64} In addition, upon review, I would overrule his remaining assignments of error and affirm his conviction for rape of a child.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and RUSSELL A. HOPKINS, Assistant Prosecuting Attorney, for Appellee.